MEYER v. UNITED STATES. ASERSON v. SAME. SCHLOSS v. SAME.

(Circuit Court of Appeals, Seventh Circuit. March 15, 1919. Rehearing Denied May 6, 1919.)

Nos. 2411–2413.

1. CONSPIRACY ⚖=28—CONCEALMENT OF BANKRUPT'S PROPERTY.

Insolvent debtors can be guilty of conspiracy to hide their property, so that their creditors cannot reach it through bankruptcy proceedings, which the debtors are expecting to be instituted; it not being necessary that at the time of the conspiracy the proceedings should be pending and a trustee appointed.

2. INDICTMENT AND INFORMATION ⚖=117—INFERENCES AGAINST PLEADER.

The rule that inferences are to be taken against the pleader does not extend to imagining inferences that are contrary to the fair common-sense reading of the averments.

3. CONSPIRACY ⚖=43(6)—INDICTMENT—INFERENCES.

In indictment for conspiracy to hide property in view of expected bankruptcy proceedings against defendants, averments that in furtherance of the conspiracy defendants turned over the check of H., belonging to them, to A., held not to allow inference that they lawfully turned it over.

4. CRIMINAL LAW ⚖=412(3)—CONCEALMENT OF BANKRUPT'S PROPERTY—EVIDENCE—DECLARATIONS.

Statements of firm's business condition, made by partners a month before bankruptcy proceeding, held, on prosecution of them for conspiracy to conceal assets from the trustee, in connection with proof of relatively small amount of property found by trustee, to be material circumstances in relation to the concealing of firm's assets, and admissible as declarations against partners making them.

5. CRIMINAL LAW ⚖=681(1)—ADMISSION OF EVIDENCE—SUBSEQUENT EVIDENCE.

Value of exception to receiving in evidence, on prosecution for conspiracy to conceal assets from trustee in bankruptcy, telegrams purporting to be signed by defendants and addressed to S. at D., without proof that defendants or either of them had authorized their transmission, was destroyed when S. thereafter testified that he received and answered the messages, and that in response to his answer one of defendants came to D. on the matter to which the messages related.

6. CRIMINAL LAW ⚖=1186(4)—REVERSIBLE ERROR—STATEMENT OF PROSECUTING ATTORNEY.

Any misconduct of prosecuting attorney in making statement in argument, as matter of personal belief apart from the evidence, of there being no doubt of defendants' guilt, will not cause reversal; the record furnishing clear demonstration of guilt.

---

⚖=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. INDICTMENT AND INFORMATION ☞119—SURPLUSAGE.

The unessential quoted words of an indictment, that the three defendants had conspired "with other persons to the grand jury unknown," may be ignored; there being no evidence of there having been more than the three conspirators.

8. CRIMINAL LAW ☞814(3)—INSTRUCTIONS—REQUEST INAPPLICABLE TO ISSUE.

Requested instruction, though stating a correct principle, is properly rejected, where there is no evidence to which it is applicable, as giving it would only becloud the issue.

9. CRIMINAL LAW ☞815(4)—INSTRUCTIONS—REQUESTS—IGNORING PART OF EVIDENCE.

Requested instruction, on prosecution for conspiracy to conceal assets from trustee in bankruptcy, that if defendants, in anticipation of bankruptcy, had agreed to make absolute transfers of some of their property, they could not be found guilty, though such transfers would be voidable preferences, was bad, as requiring an acquittal if transfers of "some" of their property were preferential only, in spite of clear evidence of concealment of other assets.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Gustave A. Meyer, Hyman N. Aserson, and Morris F. Schloss were convicted of conspiracy to conceal assets from a trustee in bankruptcy, and bring error. Affirmed.

Benjamin C. Bachrach and James H. Wilkerson, both of Chicago, Ill., for plaintiffs in error.

Charles F. Clyne and John H. Lally, both of Chicago, Ill., for the United States.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

BAKER, Circuit Judge. Plaintiffs in error were convicted of conspiracy to conceal assets from a trustee in bankruptcy.

Assignments of error challenge the indictment, the sufficiency of the evidence, the admission of evidence, the district attorney's argument to the jury, and the court's charge.

The indictment charged that plaintiffs in error expected that an involuntary petition in bankruptcy would be filed against them, and that adjudication of bankruptcy and appointment of a trustee would follow; that in anticipation of such proceedings they conspired to conceal from said trustee certain property which should belong at the time of such concealment to the bankruptcy estate, including, among many items, a certain check signed by one Morton Hill for $532.64; and that in pursuance and in furtherance of said conspiracy they turned over to one May Aserson a certain check signed by one Morton Hill for $532.64.

[1] One line of objections is based on the failure of the indictment to charge that the conspiracy included an intention on the part of plaintiffs in error to be thrown into bankruptcy and have a trustee appointed, or to charge that at the time of the conspiracy proceedings were pending and that a trustee had been appointed. These objections proceed on the erroneous theory that insolvent debtors cannot

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

properly be convicted of a conspiracy to hide their property, so that their creditors cannot reach it through bankruptcy proceedings which the debtors are expecting to be instituted.

[2, 3] Another contention is that the indictment does not show that the overt act was done to effect the object of the conspiracy. Invoking the rule that inferences are to be taken against the pleader, plaintiffs in error insist that we shall infer that they lawfully turned over the Morton Hill check to May Aserson. But the rule does not extend to imagining inferences that are contrary to the fair common-sense reading of the averments. The conspiracy is fully and clearly stated. It included the purpose to conceal the Morton Hill check, "which should belong at the time of such concealment to the bankruptcy estate." In charging the overt act the pleader averred that in furtherance of said conspiracy the plaintiffs in error turned over the Morton Hill check to May Aserson. This averment, taken in connection with the statement of the nature and scope of the conspiracy, makes it impossible to infer that the check was not the property of the bankrupts after it was turned over to May Aserson. And it is obvious that putting one's property in the possession of another may be an effective step towards concealing it from creditors. Many other overt acts are alleged, but the objection to them is precisely the same.

The evidence abundantly sustains the verdict. Among other things, the bankrupts shipped goods out of the state on pretended sales after the bankruptcy court had entered a restraining order against them. As to the formation of the conspiracy, though the evidence, as usual, is wholly circumstantial, it fully warrants the jury's finding.

[4] Schloss and Aserson were partners in a mercantile business. Meyer was their credit man. Over their objection evidence was admitted of statements of the business condition of Schloss & Aserson made by them a month before the petition in bankruptcy was filed. These property statements had no bearing on the question of conspiracy. In fact they were made before any conspiracy was formed; but, in connection with the proof of the relatively small amount of property found by the receiver and the trustee, they were material circumstances in relation to the concealing of the firm's assets. Against Schloss and Aserson they were admissible as declarations; and the court's charge to the jury excluded this evidence from operating against Meyer.

[5] Certain telegrams purporting to be signed by Schloss & Aserson, and addressed to one Siderman at Detroit, were identified by a Western Union agent as having been transmitted, and were then admitted in evidence, without any proof that Schloss & Aserson, or either of them, had authorized the transmission. But the value of the exception then taken was destroyed when Siderman subsequently testified that he had received the messages and had answered them, and that Aserson in response to his answer had gone to Detroit on the matter to which the messages related.

[6] In his closing address to the jury the district attorney said:

"Just one word more. Counsel has told you of an obligation that he has. I want to say that my obligation as a government official is to protect de-

fendants as well as to protect the rights of the government. Were there a doubt as to the guilt of these defendants, I would ask that the indictment be nollied."

Plaintiffs in error objected. The bill of exceptions does not contain what their counsel said respecting his official obligation. But the court, evidently having that statement in mind, remarked:

"I think the district attorney must have some latitude of that sort. It is his duty to do right toward the defendants as well as toward the government."

Exception was taken to the court's refusal to reprove the district attorney and admonish the jury. The reference to the district attorney's duty is true. But not every truth is relevant to the issue. His statement respecting there being no doubt of the defendants' guilt would be quite proper if the full context should show that it was the summation of his argument on the evidence, and not the expression of his personal belief apart from the evidence. But if we should grant that the small portion preserved in the bill of exceptions reaches the range of misconduct, we should still decline to reverse on this record which furnishes a clear demonstration of guilt. In a closely balanced case, even slight misconduct of counsel might require reversal.

[7] Many exceptions are predicated on the court's refusal to give written instructions tendered by counsel for plaintiffs in error. On this subject the court said:

"No, I don't think it is proper that you should read anything to me. My duty is to charge orally and counsel's to except orally."

After this position was taken by the court, and after the court had stated that he had intended to give in his oral charge the gist of all the requested instructions, except two on behalf of Aserson, no exceptions were taken by Schloss and Meyer, and none by Aserson, save as to the two which were explicitly refused. As an addendum suggested by Aserson, the court charged:

"You cannot find one man guilty and two not guilty under the testimony."

And Schloss and Meyer each excepted.

Against this addendum the objection is urged that the indictment charged that the three defendants had conspired "with other persons to the grand jury unknown." As there was no evidence tending to prove that there were more than the three conspirators, the court's statement was correct in fact. If it was erroneous in law, it would be because the law would defeat the whole case for the government's failure to prove the above-quoted portion of the indictment. But the statute, not the drafter of the indictment, measures the law. If the pleader omits an essential element, the case fails because the pleader cannot shorten the law. If he includes all the essential elements and more, again the pleader cannot enlarge the law, and the case will be sustained and the law vindicated by ignoring the unessential allegations. U. S. v. Vickery, Fed. Cas. No. 16,619; Wilson v. U. S., 190 Fed. 427, 111 C. C. A. 231.

[8] One of Aserson's rejected requests stated that, inasmuch as the indictment charged a conspiracy in anticipation of bankruptcy proceedings, a verdict of guilty could not be based on proof of a conspiracy which was not entered into until after bankruptcy proceedings had been instituted. Correct; but there was no evidence to which it was applicable and the giving of it would only have beclouded the issue.

[9] Aserson's other rejected request was that, if the jury should find that the defendants, in anticipation of bankruptcy, had agreed among themselves to make transfers of some of their property, and that said transfers were to be absolute, and that the defendants were not to conceal the proceeds of the property so transferred, the jury could not find the defendants guilty, even though such transfers would constitute voidable preferences. As the evidence showed some matters that might be only preferences, and not concealments of assets, it would have been error to refuse to give a proper instruction on this subject. But Aserson wanted the court to charge that, if transfers of some of their property were preferential only, the jury could not convict in spite of clear evidence of concealment of other assets.

The judgment in each case is affirmed.